```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                          WESTERN DIVISION


UNITED STATES OF AMERICA         . CASE NO.
                                 . ELIZABETH CITY, NC
V.                               . OCTOBER 22, 2015
                                 . 5:15-CR-147-FL1
JOSEPH MOORE                     .
. . . . . . . . . . . . . . . . .

                 TRANSCRIPT OF SENTENCING HEARING
              BEFORE THE HONORABLE TERRENCE W. BOYLE
               JUDGE, UNITED STATES DISTRICT COURT


APPEARANCES:

FOR THE UNITED STATES:     JASON KELLHOFER, ESQUIRE
                           ASSISTANT U.S. ATTORNEY
                           800 FEDERAL BUILDING
                           310 NEW BERN AVENUE
                           RALEIGH, NC  27601-1461



FOR THE DEFENDANT:         R. ANDREW McCOPPIN, ESQUIRE
                           PUBLIC DEFENDER'S OFFICE
                           150 FAYETTEVILLE STREET MALL
                           SUITE 450
                           RALEIGH, NC  27601
```

COURT REPORTER:         MS. SANDRA A. GRAHAM, CVR

Proceedings recorded by stenomask, transcript produced from dictation.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

1  **THE COURT:**  You're Joseph Moore?

2  **MR. MOORE:**  Yes, sir.

3  **THE COURT:**  Do you want to say anything about your sentence

4  or your case?

5  **MR. MOORE:**  Yes, sir.

6  **THE COURT:**  Go ahead.

7  **MR. MOORE:**  I've been charged with lying to federal agents

8  about lying about international and domestic terrorism, and

9  for that I am absolutely responsible and accept full

10  responsibility for that action.  Whenever I first become a

11  Muslim back in February of 2013 and come back to Raleigh,

12  the first Muslims that I had met were a Muslim who was

13  talking about leaving to go overseas and a Muslim who was

14  obsessed with Syria.  And these were the first people that

15  I was exposed to upon becoming Muslim.  But with time and

16  exposure to the community and learning the truth about

17  Islam, I distanced myself from them and their ideology, but

18  the mistakes of being a part of such bad company and not

19  being forthright with federal agents whenever they asked me

20  about said company is the consequences that I am dealing

21  with today.  And for that I, you know, am eternally

22  remorseful and apologetic, and I'll have to deal with this

23  for the rest of my life as a convicted felon, being

24  stripped of rights and having to carry this moniker with me

25  into every job interview and into every college application

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 2 of 37

1    going forth.  And this doesn't take away from the mistake
2    that I made, but, you know, in the time away from them, not
3    as a result of fear of going to prison, once I was able to
4    talk to my attorney and sit with federal agents again they
5    found me to be forthright and beyond that helpful.  Because
6    I was born in America and, you know, when it comes to
7    national safety and things like this, it's not just my
8    concern as an American citizen but also as a Muslim and as
9    a human being to make sure that people are safe.  And I
10   expressed to federal agents that if I could be helpful in
11   any way, shape, form or fashion with anything that I did
12   know that I would be more than willing to help deter any
13   type of radicalism or extremism in the community.   As
14   someone who volunteers and teaches and works with tens of
15   dozens of youth every weekend for the past year and a half,
16   I have sought to teach them against radicalism, against
17   extremism in their religion.  And all these character
18   letters and things like that, I hope you were able to look
19   at, you know, would have shown you the character that I
20   have grown into with time.  And I know that it's a long
21   shot and that the odds are stacked against me, but I would
22   hope that at your discretion upon looking at all these
23   evidences that you would see that it would be more
24   beneficial to the community to have me around.  Obviously
25   I've planned my future.  I wanted to be married next

1   summer, I wanted to finish up at Wake Tech this semester

2   and continue into higher education at a major university,

3   but obviously all these things would be deterred if I was

4   put in prison.  I don't have a history of violence or

5   anything like that, and I would not act out against the

6   government or anything to that effect.  And I would hope

7   that at your discretion that you would find in your heart,

8   even if it was the maximum, to simply forego imprisoning me

9   and put me on probation so that I can continue in the

10  service that I have been a part of and that has made me a

11  better human being.

12  **THE COURT:**  Thank you.  Mr. McCoppin, his guideline report

13  establishes an offense level of 23, criminal history

14  category 1, do you have any objections to that?

15  **MR. McCOPPIN:**  No.  That's calculated correctly.

16  **THE COURT:**  So that's a guideline range of 46 to 57 months?

17  **MR. McCOPPIN:**  It is.

18  **THE COURT:**  Do you want to speak about his sentence?

19  **MR. McCOPPIN:**  I do, if I may.  Your Honor, I previously

20  forwarded to Judge Flanagan well over a dozen letters of

21  recommendation.

22  **THE COURT:**  You sent those to Judge Flanagan?

23  **MR. McCOPPIN:**  I did, and I checked with your clerk earlier

24  this week to make sure you have them.  I have the hard

25  copies here if you would like.  They were filed a week in

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 4 of 37

1  advance as per the rules.

2  **THE COURT:** We've got them. Let me take a look at them for

3  a minute.

4  **MR. McCOPPIN:** Yes, Your Honor.

5  **THE COURT:** Where is the terrorism? Is it internal in

6  places like Syria and Lebanon and Iraq, or is it external.

7  Is it terrorism that's directed at the United States. I

8  don't get it. And I'm not trying to be facetious at all.

9  I'm trying to be extremely pointed in trying to figure this

10  out. Like if these guys wanted to go to a Middle Eastern

11  country in order to do something in that country, but it's

12  not directed at the United States, is that terrorism under

13  American law?

14  **MR. McCOPPIN:** I understand that it is, yes. Promoting

15  terrorism outside the United States.

16  **THE COURT:** Not directed against the United States?

17  **MR. McCOPPIN:** I believe the statute refers to any foreign

18  government as part of the element. If the Government would

19  like to --

20  **THE COURT:** Well, I don't want them to talk right now.

21  **MR. McCOPPIN:** I understand. I can give you some more

22  information, as I understand it, if you would like.

23  **THE COURT:** I mean the people in Ceylon which has a new

24  name, Sri Lanka, maybe. Who knew? The Tamiles; is that

25  what they are? Who knows? Do you know?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 5 of 37

1  **MR. McCOPPIN:**  I don't.

2  **THE COURT:**  No.  They're chopping each other up on a

3  regular basis for decades leading into centuries leading

4  into millennia, and do we care about that, I mean, in the

5  United States?  Is that a burden of federal law?  And then

6  transpose it to Syria, which if you're a little older and

7  pay attention to history it used to be the UAR, United Arab

8  Republic.  And it was Egypt and Jordan and Syria, I

9  believe, when Nasser was the strong man.  You don't

10  remember any of this?

11  **MR. McCOPPIN:**  Only from studying history.

12  **THE COURT:**  And now it's Syria.

13  **MR. McCOPPIN:**  And the British left and it kind of divided

14  up.

15  **THE COURT:**  And then Syria had a government or has a

16  government or doesn't have a government, and there are an

17  assortment of people who are trying to kill each other

18  there in order to claim sovereignty over that.  And so is

19  that what these two guys were into?

20  **MR. McCOPPIN:**  As I understand it, both of them had been

21  making plans to travel to Syria to actively participate in

22  creating what they saw as a Muslim homeland.

23  **THE COURT:**  Well, it's a Muslim homeland now.

24  **MR. McCOPPIN:**  Well, I guess it depends on how you define

25  it.  Perhaps very true to the Qur'an interpretation of

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 6 of 37

1    their religion.

2    **THE COURT:**  And is that directed as terrorism against the

3    United States?

4    **MR. McCOPPIN:**  Well, it's directed against the government

5    of Syria, which as I understand it likely provides for

6    jurisdiction.

7    **THE COURT:**  It does what?

8    **MR. McCOPPIN:**  As I understand it, if you are going to

9    create -- if you are supposedly going to promote terrorism,

10   provide material support to a terrorist organization -- a

11   terrorist organization as I understand it from the case law

12   doesn't have to be directed at the United States.  If

13   there's a terrorist organization targeting another

14   government --

15   **THE COURT:**  So the Assad government is the target?  But I

16   thought Assad and Putin were just in Russia entering into a

17   pact.

18   **MR. McCOPPIN:**  And against the United States and Turkey in

19   large part, yes.

20   **THE COURT:**  Uh-huh.  My enemy's enemy kind of thing?

21   **MR. McCOPPIN:**  It depends on the day.

22   **THE COURT:**  And so this fellow here didn't tell the truth

23   about the purported intentions of the other two guys?

24   **MR. McCOPPIN:**  Correct.  The day before the other two

25   individuals were arrested by federal agents, federal agents

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 7 of 37

1    came to Mr. Moore here, and they asked him some questions.

2    As I understand it --

3    **THE COURT:**  And he was untruthful in his answers?

4    **MR. McCOPPIN:**  He was.  Mr. Moore didn't fabricate a lie,

5    but when asked specific questions, did he see them with

6    guns or weapons, he said no.

7    **THE COURT:**  Okay.

8    **MR. McCOPPIN:**  So it's clearly a lie, but he didn't make up

9    a story.  And there was a second question about did Mr.

10   Moore know anything about these other two people planning

11   to go overseas and fight to establish a Muslim homeland.

12   And again he said, no, which was clearly a lie, and those

13   two statements are the reason we are here today.

14   **THE COURT:**  That's the gravamen of the charge against him?

15   **MR. McCOPPIN:**  It is.

16   **THE COURT:**  Okay.  All right.  Anything else?

17   **MR. McCOPPIN:**  Yes.  If I could take just a few minutes and

18   give you a little bit of background.

19        Mr. Moore is a young man.  He grew up and lived in a

20   home with his mother and his brother.  When he finished the

21   ninth grade in Kentucky they moved to the Raleigh area.  He

22   was very astute in religious study even as a high schooler.

23   **THE COURT:**  What religion -- what faith was he?

24   **MR. McCOPPIN:**  He was Christian.

25   **THE COURT:**  Was he raised in a particular denomination?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 8 of 37

1    **MR. McCOPPIN:**  Seventh Day Adventist, Christian.

2    **THE COURT:**  Okay.

3    **MR. McCOPPIN:**  And his mother is here and she still is a

4    member of that church.

5    **THE COURT:**  So he was born into a Seventh Day Adventist

6    family, or not?

7    **MR. McCOPPIN:**  I believe so, yes.

8    **MR. MOORE:**  I was born in a household that believed in God

9    and the Bible.  And later as I got older and studied the

10   Bible I became a youth minister for a Seventh Day Adventist

11   church, which later sponsored me to go to a Christian

12   seminary school, Mount Pisgah Academy.  And that's what

13   actually caused me to move from Kentucky to North Carolina.

14   **THE COURT:**  So you were the only member of the Seventh Day

15   Adventist religion in your family?

16   **MR. MOORE:**  My mother, she was assigned in Iraq.

17   **THE COURT:**  Where?

18   **MR. MOORE:**  She was in Iraq.

19   **THE COURT:**  Doing what?

20   **MR. MOORE:**  She was a part of the military.  She was with

21   the --

22   **MR. McCOPPIN:**  The U.S. military?

23   **MR. MOORE:**  Yes.  She was with the 91st Infantry group out

24   of Fort Campbell.

25   **THE COURT:**  An active duty member of the Armed Forces?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 9 of 37

1    **MR. MOORE:**  Yes, sir.

2    **THE COURT:**  Your mother?

3    **MR. MOORE:**  Yes, sir.  When she came back upon seeing how I

4    was involved in the church she actually became a part of

5    the church.

6    **THE COURT:**  Of the Seventh Day Adventist Church?

7    **MR. MOORE:**  Yes.

8    **THE COURT:**  So at birth your family had some affinity for

9    Christianity.

10   **MR. MOORE:**  Yes, sir.

11   **THE COURT:**  And later you became denominational in the

12   Seventh Day Adventist Church.

13   **MR. MOORE:**  Yes, sir.

14   **THE COURT:**  And then later in your maturity or your

15   development you became a believer of Islam?

16   **MR. MOORE:**  Yes, sir.  I had gone to seminary school, I had

17   read the Bible 13 times cover to cover in seven different

18   versions.  And I talked to a friend of mine who had become

19   a Muslim, and it just answered some questions that I never

20   had, so I kind of considered it being like a true religion

21   sort of, I guess.

22   **THE COURT:**  Okay.  Thank you.

23   **MR. McCOPPIN:**  So his local congregation sponsored his

24   tuition to go to the high school seminary where he stayed

25   for awhile.  He was doing fine there, but moved back home

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 10 of 37

1    because he didn't like being away from his mother and the

2    family.  He graduated from Millbrook in Raleigh.  He has

3    had several jobs, as the pre-sentence report indicates,

4    continuous employment.  There's a small break of getting

5    workers' comp injury from moving boxes in some sort of

6    shipping warehouse.  But he has had employment, he has no

7    criminal history.  You've seen the letters, and he's

8    written a two-page, single spaced acceptance of

9    responsibility statement that's included in the record.

10        So the question is what do we do with this man.  Who

11   has come here to stand up for Mr. Moore.

12        (Several people stand)

13   **THE COURT:**  Okay.

14   **MR. McCOPPIN:**  Thank you.  Your Honor, there would have

15   been more, but we changed the sentencing day and time from

16   yesterday until today, so some people couldn't adjust their

17   schedule.

18        I double-checked with probation.  A 1001 violation

19   starts at an offense level six.  If it's a case that

20   involves some --

21   **THE COURT:**  Is that what this is, a 1001 violation?

22   **MR. McCOPPIN:**  It is.

23   **THE COURT:**  An untrue statement to a federal official?

24   **MR. McCOPPIN:**  That's all it can be.  That's what it is,

25   and it is serious, but in the -- relatively speaking I

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 11 of 37

1    would suggest that it may fall on the less serious side of

2    offenses that you see here on a regular basis.

3         So we start off with what would be an offense level

4    six.

5    **THE COURT:**  It's not a sworn statement.  It's just

6    material.

7    **MR. McCOPPIN:**  That's correct.  What I understand happened

8    here is law enforcement, federal agents, came to Mr. Moore,

9    identified themselves, we're federal agents.  We want to

10   talk to you.

11   **THE COURT:**  And materiality is still a question of law?

12   **McCOPPIN:**  Well, it's a question of fact.  I would believe

13   the jury would have to decide it at trial.

14   **THE COURT:**  If you were in a jury trial involving 1001,

15   does the jury -- I think maybe now they do, but at one time

16   they didn't -- whether the content of the statement was

17   material or not was an issue for the judge and whether you

18   said it was an issue for the jury.

19   **MR. McCOPPIN:**  I am not qualified to answer that,

20   basically.

21   **THE COURT:**  No big deal.

22   **MR. McCOPPIN:**  But what we have here is him answering

23   falsely.  After he had made those statements --

24   **THE COURT:**  Well, you can give them a false statement.  You

25   just can't give them a materially false statement.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 12 of 37

1    **MR. McCOPPIN:**  Correct.

2    **THE COURT:**  You know, if they say to you, good morning, I'm

3    Agent Special from the FBI and here's my coat and look on

4    the back of it, it says FBI.  How old are you?  I'm 59.

5    You're 59.  Okay.  I'll write that down.  And actually

6    you're 58.  That's immaterial unless you're trying to get a

7    benefit at the age of 59.

8    **MR.  McCOPPIN:**  All true.

9    **THE COURT:**  Even if you know it's false, even if you're

10    lying about your age.

11    **MR. McCOPPIN:**  Correct.  Materiality is an element of the

12    offense.

13    **THE COURT:**  And materiality means important.

14    **MR. McCOPPIN:**  Yes.

15    **THE COURT:**  Critical.  Something upon which people rely.

16    **MR. McCOPPIN:**  Yes.  The circumstances of this case make

17    this defendant's material false statement irrelevant to the

18    case.  And the reason we know that is the very day after he

19    made these false statements the Government charged those

20    other two people with attempting to provide material

21    support.  There was no delay caused by Mr. Moore's false

22    statement that delayed the Government proceeding.  They had

23    a person embedded in that group that included those other

24    two people who had been making tape recordings and filing

25    reports with the government that led to the arrest of those

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 13 of 37

1    other two people.  So the statements by Mr. Moore insofar

2    as affecting the government's case against the other two

3    people is irrelevant in their proceeding against them and

4    ultimately getting guilty pleas.  So I would agree that his

5    false statements were material to the prosecution of those

6    other cases but were largely irrelevant because they

7    already had tape recordings, eye witness accounts by the

8    agent, and ultimately their confessions now.

9        So what we have here is we go from six points to 14

10   points in the guidelines because it involves issues related

11   to international terrorism.  And since it relates to

12   international terrorism, then there's another 12 point

13   enhancement that goes on top of the 14.  So we go from what

14   would have arguably been a level six offense for a 1001

15   violation all the way up to a 26 minus three for acceptance

16   of responsibility.

17       Mr. Moore's history and the letters that you have

18   before you all talk about public work for the community,

19   his Muslim faith, teaching young people that well predates

20   the Government coming to him and telling him that he's a

21   target.  And I present that to you to remind you of the

22   sincerity of his conviction.  He has finished the course

23   work and the training that qualifies him to be -- what I

24   would consider to be a preacher in the Muslim faith.  All

25   he has to do is finish some sort of ceremony that was to be

1   conducted I think this weekend, correct?

2   **MR. MOORE:**  I have been studying under one of the top

3   teachers that comes to our community and for like, you

4   know, the education of Islam.  He gives out a certification

5   that says you are qualified to speak on certain matters of

6   the religion, whether it be like our belief or how we come

7   to the understanding of like different rulings and things

8   like this.  And he's coming the last weekend of the month,

9   and I was supposed to, God willing, get the qualifications

10  from him then, so that I can further use that as a part of

11  educating the youth in the community at large.

12  **MR. McCOPPIN:**  So what it allows him to do is lead prayer

13  at the mosque and to speak to the congregation.  I'm not

14  sure it is as high as to be ordained as someone in the

15  Christian faith might understand it to be.  But it's very

16  significant.  And what we have here is someone who by his

17  own fault has committed these offenses but has tremendous

18  other qualities that are worthy of consideration.  He's a

19  young man, he's going to preach at the mosque, he's going

20  to talk to his congregation with others.  And this is going

21  to be the sermon that he gives every year about his

22  experience with law enforcement and the consequences and

23  why people need to do the right thing.  And so much more

24  than other cases it places you in a more difficult role.

25  Do you send him to prison for a long time to remind people

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 15 of 37

1    about you can't be dishonest and not give information about

2    them.

3    **THE COURT:**  Why would the presence of guns in the

4    possession of the two other guys -- why was that material?

5    Was there some supposition that they would get on a plane

6    and carry a couple of guns with them and fly -- like a

7    shotgun and fly to Damascus and get off and say I'm here

8    with my .410, let me at them.

9    **MR. McCOPPIN:**  Not in the discovery I received.

10   **THE COURT:**  Well, I mean what's the relevance of the fact

11   that they had guns?  Certainly no one is getting on an

12   airplane with a couple of shotguns and flying to the Middle

13   East and getting off and thereby engaging in military or

14   quasi-military activities, no one.

15   **MR. McCOPPIN:**  Absolutely correct.  And it was only -- to

16   learn about firearms.  None of them were prohibited persons

17   at the time as far as I know, and so it was an otherwise

18   lawful activity.  The thing that stuck with me as his

19   attorney trying to advise him was, did you know about them

20   having these discussions about going overseas and making

21   these plans and preparing to do certain things.  And he

22   said, no.  That's what I, as his counsel, saw as a material

23   element that the jury would likely stick on and provide as

24   a basis for his conviction.

25          And since all of this has happened a year later after

1  these other folks were arrested, the FBI and the agents

2  came back and talked to him, he acknowledged that he was

3  untruthful with them.  He has been debriefed with them at

4  least twice.  And I was with him for at least part of --

5  **THE COURT:**  Where does this crime -- it's 1001, which can

6  apply to anything.  You can say, you know, I dug a hole in

7  wetlands and lie about it.  But is this part of the Patriot

8  Act or not at all affected by the Patriot Act?

9  **MR. McCOPPIN:**  I don't think the 1001 is.

10  **THE COURT:**  No, 1001 has been here forever.

11  **MR. McCOPPIN:**  Right.  The enhancements for 14 plus another

12  12, I didn't check the historical history there.  But I

13  asked probation whether they could include language in the

14  pre-sentence report letting the Court know that a variance

15  downward might be appropriate.  They thought that it was,

16  and they included it in the very last page.

17  **THE COURT:**  Well, if it was just a false statement, you

18  know, the EPA comes to your backyard, and they say, we see

19  some cypress trees here.  Uhm, this is a wetland; did you

20  dig that ditch?  No.  But you did dig the ditch.  Would it

21  be a level six as the base offense level?

22  **MR. HARDISON:**  Your Honor, that would likely fall under

23  2B1.1, which would start off with a level six.

24  **THE COURT:**  And then there wouldn't be any other

25  enhancements?

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 17 of 37

1    **MR. HARDISON:**  No, sir.

2    **MR. KELLHOFER:**  If I may, the only enhancement would be if

3    there was a dollar amount of loss associated with it.

4    **THE COURT:**  No.  They wanted you to get your shovel back

5    and start backfilling that ditch and then plant some

6    wetland sensitive plants so that you would remediate the

7    terrible damage that you had done.

8    **MR. KELLHOFER:**  Yes, sir.

9    **THE COURT:**  Okay.

10   **MR. McCOPPIN:**  Your Honor, I'm going to ask you to ask you

11   to take all that into consideration.  If anyone is worthy

12   of a variance, I would suggest that Mr. Moore is.

13   **THE COURT:**  It wouldn't be a variance if I found that the

14   report inaccurately calculates things and that the

15   statement is a false statement and no more than that, and

16   it was a level six, then it would be zero to six would be

17   his guideline.

18   **MR. McCOPPIN:**  Your Honor, with your permission I would

19   like to add an oral objection to the pre-sentence report,

20   that the statements are not material and ask that you

21   consider sentencing him at an offense level six.

22   **THE COURT:**  Yeah.

23   **MR. McCOPPIN:**  Thank you.

24   **THE COURT:**  I'll hear from the Government.

25   **MR. KELLHOFER:**  Your Honor, I have great concern that --

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 18 of 37

1    first of all, I understand if they are not material I don't
2    understand how some people could have pled guilty to that
3    offense.
4    **THE COURT:**  I can't hear you.
5    **MR. KELLHOFER:**   Materiality is an element of this offense
6    to which he pled guilty and which is incorporated within
7    this plea agreement.  So I have great concerns with that
8    statement.  I'll move on and address I think some of your
9    concerns, however.  I think at the outset it's important to
10   note what you've just heard is I think going to be in stark
11   contrast to fleshing out the facts for you.  And I think
12   that fact alone is somewhat important here as to why this
13   individual needs to recognize the materiality of his lie in
14   his comment.  So if I may, to support some of the concerns
15   that I've heard, I would like to go through some of the
16   facts, Your Honor.
17        This case began in early 2013 with an investigation of
18   Avin Brown.  As part of that investigation, Your Honor, it
19   soon revealed that there was a strong relationship between
20   that individual, Avin Brown, another individual by the name
21   of Jordan, last name Jordan, and then the defendant, Mr.
22   Moore himself.  The investigation ultimately came to -- the
23   investigation portion came to a screeching halt on 19 March
24   2014.  And the reason for that was because Avin Brown
25   attempted to board a flight out of Raleigh-Durham

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 19 of 37

1    International Airport to Turkey.  He had made contact with

2    an Al Quaeda fighter, an individual -- Al Quaeda affiliate,

3    I should say, ISIS, the Islamic state of Iraq and Shim,

4    otherwise known as Syria.  The Government essentially --

5    its hand was forced at that time to move forward given that

6    this individual was attempting to travel, and we had a good

7    indication as to why he was attempting to travel.

8    **THE COURT:**  Why was he attempting to travel?

9    **MR. KELLHOFER:**  I could better answer that through the fact

10    that we had the opportunity now specifically to -- to

11    proffer with that individual Brown, and he has explicitly

12    told us why.  The reason he was attempting to travel was he

13    had fallen into what I would consider the cult like

14    ideology of Al Quaeda, ISIS, otherwise international

15    terrorist groups, designated groups by the United States.

16    Insofar as what is a terrorist group.  The definition is at

17    2331, Your Honor.  And it specifically states that

18    international terrorism includes activities involved in

19    violent acts or acts dangerous to human life that are a

20    violation of the criminal laws of the United States, or of

21    any State, or that would be a criminal violation if

22    committed within the jurisdiction of the United States or

23    of any State; those that appear to be intended to

24    intimidate or coerce the civilian population.  Utilizing

25    that, what Brown informed us is he intended along the line

1   of the ideology of these groups to begin -- to begin in

2   Syria.  Syria is currently -- it still remains -- observed

3   as an opportunity for these groups.  They believe that

4   they've established under the Muslim faith what's known as

5   the caliphate.  Essentially it's a government that would be

6   run under Sharia law, Islamic law.  Unfortunately these

7   individuals have twisted the Muslim faith, the Islam faith

8   and turned that into something that should be accomplished

9   and can be accomplished through violence.  Their intent is

10  to establish this caliphate which they view as a government

11  that runs both your personal affairs as well as your

12  economical and your government affairs under that specific

13  religious law.  Moreover, Syria is only a jumping point.

14  The point is to establish the caliphate there and then move

15  specifically into Lebanon and now on to the remainder of

16  the world.  They view as their nemesis democracy, because

17  democracy allows for a multitude of religions.  So I think

18  Congress did a good job as well in Chapter 113B, which

19  involves terrorism within federal criminal law.  And

20  Congress specifically states at 2339B in the note section

21  that Findings: Congress has found that international

22  terrorism is a serious and deadly problem that threatens

23  the vital interest of the United States.

24       The Constitution confers upon Congress the power to

25  punish crimes against the law of nations and to carry out

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 21 of 37

1    the treaty obligations of the United States.

2         It goes on to say why those are great concerns.  They

3    affect us, they affect our global partners.  So there's a

4    host of reasons that this action of intending to go to

5    Syria, to join ISIS, to establish a caliphate, to move that

6    on to world wide domination affects the United States in a

7    great and grave manner.

8    **THE COURT:**  So he's a threat to world peace?

9    **MR. KELLHOFER:**  I think this individual thwarted the United

10   States in catching those individuals, absolutely, yes.

11   **THE COURT:**  Good.

12   **MR. KELLHOFER:**  So in this instance what did he do, the

13   materiality here that the government would need to show

14   before a jury -- and it's my understanding it is a fact for

15   the  jury.  At this point I think Your Honor is correct.

16   **THE COURT:**  He's not being punished by the law because of

17   his beliefs or his speech?

18   **MR. KELLHOFER:**  Absolutely -- absolutely not, Your Honor.

19   **THE COURT:**  So he has the First Amendment freedom of

20   religion right to exercise that and he has the First

21   Amendment freedom to speak and to assemble?

22   **MR. KELLHOFER:**  And, you know, insofar as this case -- I

23   think this case is an excellent example of that.  And

24   here's why, Your Honor.

25   **THE COURT:**  Of protecting his --

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 22 of 37

1  **MR. KELLHOFER:** Of protecting his rights, yes.

2  **THE COURT:** -- protecting his speech, assembly and

3  religious rights?

4  **MR. KELLHOFER:** I do, absolutely. And here's why. During

5  this case the Government utilized an undercover,

6  essentially, utilized other means and methods to obtain

7  evidence. And the Government ultimately concluded on that

8  day that Avin Brown was traveling -- there was sufficient

9  evidence to stop him now. And moreover he had engaged in

10  conspiracy.

11  **THE COURT:** Brown?

12  **MR. KELLHOFER:** The conspiracy that is essentially a speech

13  crime to some extent, if you will.

14  **THE COURT:** But the other guy, the guy that was going to

15  Syria, not this guy?

16  **MR. KELLHOFER:** Correct. Avin Brown and another

17  individual, Jordan.

18  **THE COURT:** This guy is not a conspirator?

19  **MR. KELLHOFER:** No. We didn't charge him as a conspirator.

20  And I think that's what goes back to point that this

21  individual, we had a plethora of evidence of his mindset,

22  of his belief that those --

23  **THE COURT:** Of this gentleman's belief?

24  **MR. KELLHOFER:** Of this gentleman right here.

25  **THE COURT:** You can't commit a crime by belief.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 23 of 37

1    **MR. KELLHOFER:** Correct. And that is why he was not

2    charged in that conspiracy. And I think that's why this is

3    an excellent example of protecting those rights for him.

4    The Government made that decision, you know what, he had

5    those beliefs but he was not acting on them like Avin Brown

6    had by traveling. And the plan between the two of them

7    specifically was Avin Brown would get over there and then

8    essentially make contact.

9    **THE COURT:** He wasn't Mirandized because he wasn't in

10   custody, correct?

11   **MR. KELLHOFER:** Who are we speaking of, Avin Brown?

12   **THE COURT:** This gentleman.

13   **MR. KELLHOFER:** Yeah, absolutely. He was not in custody.

14   **THE COURT:** So he was interviewed but not Mirandized?

15   **MR. KELLHOFER:** Correct.

16   **THE COURT:** But technically he wasn't in custody, so he was

17   not advised that a statement that was untrue that the agent

18   considered to be material would be actionable?

19   **MR. KELLHOFER:** Actually, the Government took that step and

20   said you know what, we are going to specifically inform you

21   of that. He was specifically told, anything you tell us,

22   if you lie to us, that's a federal offense. As a matter of

23   fact, at the end of the interview if there's anything you

24   said that you want to change, take back, add, please do so

25   now. He did not. So he was advised.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 24 of 37

1    **THE COURT:**  Where was he interviewed?

2    **MR. KELLHOFER:**  The interview took place in Kentucky at --

3    if I may ask the agent here.  I want to say I believe it

4    was his father's home, Your Honor.  I'm not sure.  It was a

5    personal residence where he was located at the time in

6    Kentucky at that moment.

7    **THE COURT:**  And who did the interview?

8    **MR. KELLHOFER:**  The interview was by FBI agents, Your

9    Honor.

10   **THE COURT:**  Special Agents?

11   **MR. KELLHOFER:**  Yes.  Two Special Agents that were out of

12   that office located there, yes.  And, like I said, they

13   sort of had to act quickly given that one individual had

14   traveled.  We knew that Mr. Moore had these beliefs, that

15   he had contact --

16   **THE COURT:**  So this was the day before you were going to

17   arrest the other people?

18   **MR. KELLHOFER:**  The day of the arrest, Your Honor.

19   **THE COURT:**  The day of the arrest?

20   **MR. KELLHOFER:**  Yes.  So what I would like to highlight for

21   you is that --

22   **THE COURT:**  You had made a commitment to arrest the other

23   people, hadn't you, irrespective of his input?

24   **MR. KELLHOFER:**  Oh, absolutely, yeah.  Absolutely.  Given

25   the travel that was taking place, certainly.  I think

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 25 of 37

1  insofar as where we were and what was going on with this

2  individual and where we decided to act, I think there was

3  some --

4  **THE COURT:**  Why did you interview him if you had already

5  made a commitment to arrest the other people?

6  **MR. KELLHOFER:**  Why did we interview him?

7  **THE COURT:**  Yes.

8  **MR. KELLHOFER:**  Hopefully to obtain -- at that time the gig

9  is up and we're no longer covert and anyone associated with

10  that individual whom we believe had that mindset and intent

11  it was our belief that we had better act now.

12  **THE COURT:**  And this is not entrapment?

13  **MR. KELLHOFER:**  No, absolutely not.

14  **THE COURT:**  How come?

15  **MR. KELLHOFER:**  Well, I think entrapment for one, the

16  Government is the individual who establishes the

17  opportunity, the crime mindset.  In this instance this

18  individual was in contact with other individuals prior to

19  being in contact with our source.  So in our view -- but

20  that would actually not even go towards the lie.  I don't

21  even -- I'm not even entirely sure how you would trap

22  someone to lie.  I would have to think that one through,

23  Your Honor.  But here, here's some interesting facts, Your

24  Honor.  So on 11 October 2013 there's a recording, and Mr.

25  Moore states, we've got to organize ourselves.  The group

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 26 of 37

1     at that point appoints Mr. Moore as the spiritual leader.
2     They appoint Brown, the individual who traveled and had
3     contacts overseas, they appoint him as the international
4     relations, in charge of international relations.  They
5     appoint Jordan, who is a pretty buff guy as the physical
6     fitness -- handling physical fitness.  And then they
7     appoint the CHS as the Board of Transportation because he
8     had a car.  Towards the end of the conversation Moore
9     affirms that even this results in a horrible death and he
10    dies tomorrow that he would go to heaven.  On 22 October,
11    shortly later, there's again another meeting and Moore
12    states that he wants to make sure to get into good enough
13    shape so he can put his hands through the chest of a kafir,
14    a non-Muslim.  And this is where it takes us into -- we
15    have these beliefs, but do have the action.  Now on 23
16    October, just a day later, Moore then meets with the CHS
17    and Jordan and during that recording there's a discussion
18    about the meaning of an Arabic term Hijra.  And it's often
19    utilized from my experience, Your Honor, in these cases
20    covertly as attempting to get to jihad.  And so they're
21    discussing actually Hijra and in truth just as a pilgrimage
22    that is taken by Muslims.  But he, Moore, is explaining to
23    Jordan what the term means and he states, well, it actually
24    means migration but Moore states but the reason we're going
25    is jihad.  And then he states I'm not at that point now.

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 27 of 37

1    So this is why I say the evidence displays the mindset but
2    we -- to be perfectly honest at this point, in our view, it
3    was wishy-washy.  And it simply wasn't enough to move
4    forward on the conspiracy charge.  So he was interviewed.
5    During that interview he denied that he ever entertained
6    any discussions with anyone wanting to wage jihad.  He
7    stated that he had never talked with Brown in a
8    conversation even peripherally discussing anyone overseas,
9    killing anyone overseas, waging violent jihad or traveling
10   for that purpose.  He stated he had not participated in any
11   group where he had been a member for that purpose.  He
12   stated that he had never heard Brown or Jordan discussing
13   violent jihad or travel.  He then went on to flesh that out
14   and say, well, on the other hand he had heard Brown talk
15   about going to Yemmen just to get a bride.  He stated that
16   he never engaged in any activity involving weapons with
17   Jordan when in truth he had been in Jordan's home and had
18   been shown how to take apart an assault rifle.  As a matter
19   of fact, rather than just say, no, he said, well, you know,
20   at Jordan's house I had seen a sword.  That's all.  He
21   denied that he had ever entertained any discussions of this
22   matter.  So I think it was a multitude of lies when he had
23   spent a substantial amount of time with these individuals.
24   Brown -- when Brown proffered with us after having pled
25   guilty after a number of months, or after a brief speak

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 28 of 37

1    with us after a number of months, he stated that he had a
2    number of discussions with Moore, with Moore present, that
3    Moore would have them take out the batteries of their cell
4    phones because eagle eyes were listening, referring to the
5    Federal Government.  He stated that during this time they
6    had spoke often of going overseas for jihad and used the
7    term fisabilillah.  I'm probably pronouncing that
8    incorrect.  It's f-i-s-a-b-i-l-i-l-l-a-h.  But it was a
9    covert method of basically saying going overseas for this
10   violent purpose, for what they term, their word, jihad.
11   They were speaking code because they knew that they would
12   get arrested if they were caught doing this.  And that Mr.
13   Moore was aware that they were seeking passports at the
14   time as well for this purpose.  These things additionally
15   later on, as Mr. Moore stated, he did tell us when he spoke
16   to us as well.  Jordan additionally proffered and stated as
17   much, the same things.  Now with regard to Brown he did
18   specifically say that there had been a point where they had
19   sort of broken apart, that Mr. Moore had, in fact,
20   withdrawn from them.  And the reason for this, according to
21   Mr. Brown, was that Brown believed that this going
22   overseas, this joining in this, this establishing this
23   caliphate, this engaging in violence and by violence, I
24   mean warfare, to establish this.  That doing this was
25   obligatory upon every Muslim.  That was Brown.  And that

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 29 of 37

1    Mr. Moore felt that while it was a good thing it was not
2    obligatory to fight.  And so they had a falling out, if you
3    will.  And Mr. Moore then began to sort of separate
4    himself.  Jordan states that he was -- Jordan himself was
5    just so blunt about things that he actually feared that --
6    he believed that Moore had sort of separated himself
7    because Moore made him believe that Jordan was in fact an
8    informant, because Jordan was apparently so blunt about
9    things and Moore was much more of a careful individual,
10   take the batteries out of phones and things like that.

11       So when it's portrayed, Your Honor, as, hey, did you
12   know these guys, you know, talked anything about going
13   overseas or jihad stuff, no, I didn't know that.  That's a
14   little different.  After this individual lied to us,
15   thwarted our efforts.  And when I say -- I say thwarted our
16   efforts, because these individuals fortunately did not go
17   to trial.  So I can't tell you what any one piece of
18   evidence that he had had he been an honest individual and a
19   witness for us would have meant.  I submit that it
20   certainly would have been material to have a non-government
21   insider who heard these things, the things that he
22   subsequently was honest and told us.  Yeah, that is
23   absolutely material.  And it would have been material had
24   this gone to trial.  Moreover, I believe it absolutely
25   would have been material to these individuals pleading much

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 30 of 37

1    earlier when in fact there was substantial litigation
2    involving classified matters, involving a whole host of
3    motions that took place that I think to some degree would
4    have had an effect on those other defendants had they known
5    Mr. Moore was testifying against them.
6         So all in all, Your Honor, I want to step back however
7    and say, thank God, that Allah, however you want to put it,
8    this individual did withdraw from that mindset.  And I
9    applaud that.  I think that takes great strength of
10   character to step away from that.  However, during this
11   period of time he was wholeheartedly within it, was not
12   somebody who appeared to be a new Muslim just getting some
13   bad advise, rather was advising, lied to the Government and
14   chose not to be open and honest and help and assist the
15   Government.  However, once confronted -- and I say he was
16   again interviewed approximately a year later after
17   essentially we had been able to secure plea agreements from
18   the other individuals, and we had been able to proffer with
19   those individuals.  At the completion of those proffers,
20   approximately four months later, Mr. Moore was again
21   approached.  He again continued his lies.  He was then
22   shown, hey, here's an audio recording.  When he was
23   presented with the evidence he did a 180 degree turn and I
24   think that at that point recognized it.  Many individuals
25   wouldn't.  And he was at that point then honest.  He then

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 31 of 37

1  subsequently pled guilty to an information, which was of
2  great assistance to the Government.  I believe that was a
3  help, and I believe that that shows his mindset in trying
4  to right wrongs to some degree.  He did proffer with the
5  Government.  He did not rise to the level of a 5K.  It was
6  information already known to the Government.  But I think
7  of note overall, Your Honor, it is the Government's
8  position that the guidelines -- they're only guideposts; we
9  recognize that.  3553 is truly, I think, the most
10  applicable and insofar as punishment being appropriate,
11  insofar as establishing the respect for the law and that
12  this individual recognize that fully.  And that those who
13  see what occurs recognize that fully.  I think that of
14  great value.  And I think the guidelines at least to some
15  degree reflect that.  We do believe that the guidelines are
16  appropriate.  Insofar as a recommendation, Your Honor, I
17  think that the guideline range is where Your Honor should
18  fall.  I recognize what he has done though, however; our
19  recommendation, therefore, would be at the bottom end of
20  the guideline range, I believe 46 months, Your Honor.
21  **THE COURT:**  What happened, if anything, to the two men,
22  Jordan and Brown?  Have they been sentenced?
23  **MR. KELLHOFER:**  They have not been sentenced, Your Honor.
24  Their sentencings have been -- have been prolonged for a
25  period of time.  They actually --

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 32 of 37

1   **THE COURT:**  Are they connected to this case?  Are they in
2   front of Judge Flanagan?
3   **MR. KELLHOFER:**  Yes, Your Honor.
4   **THE COURT:**  Okay.  Are they ready for sentencing?
5   **MR. KELLHOFER:**  No.  I would rather not get into the
6   reasons for it.
7   **THE COURT:**  No, that's fine.  They don't have pre-sentence
8   reports that are awaiting a scheduling date?
9   **MR. KELLHOFER:**  No.  They've been pushed off until January,
10  Your Honor.
11  **THE COURT:**  Okay.  Okay.
12  **MR. KELLHOFER:**  If Your Honor has no further questions.
13  **THE COURT:**  No, I don't have any other questions.
14  **MR. KELLHOFER:**  Thank you, sir.
15  **MR. McCOPPIN:**  May I, Your Honor?
16  **THE COURT:**  Yes.
17  **MR. McCOPPIN:**  You asked the Government, why did you go
18  interview this man when you already knew you were going to
19  arrest those other two people.  My professional opinion --
20  I've been coming to this courthouse for the last 20 some
21  years -- is that they were trying to solicit a lie.
22  Because they didn't have the factual basis to charge him
23  with anything else, but the Government believed he could be
24  culpable for these beliefs or discussions not rising to
25  conspiracy and that if he was untruthful that would be a

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 33 of 37

1    way that the Government could charge him with a 1001
2    violation and still pursue him.  I don't know that to be
3    the case, and I don't speak for the Government. But my
4    professional opinion is -- and they already know they're
5    going to get the other two guys -- and they confront him
6    with these questions, and they, yes, identify themselves as
7    FBI agents but don't say lying to us is a federal offense
8    until after he has answered the questions and only at the
9    end of the interview, do you want to tell us or change any
10   of your statements because lying to us is a federal
11   offense.  At that point he didn't change anything.  He made
12   a false statement.  And so to their credit to whatever
13   extent appropriate the federal agents did advise him at the
14   end of that conversation in 2014.  But this non-conspiracy
15   mindset discussion that we're talking about, according to
16   the other two people, he withdrew from.  And the statements
17   that the Government refers to are back in October of 2013,
18   approximately six months before the gentleman was about to
19   fly overseas.  So whatever mindset the three of them had,
20   Mr. Moore clearly had withdrawn from it.  I would ask you
21   to consider a probationary sentence.
22   **THE COURT:**  We'll take a brief recess.
23   (Court recess 3:10 - 3:20 p.m.)
24   **THE COURT:**  I've considered all the arguments and the pre-
25   sentence report and the statement of the Defendant and the

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646    sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 34 of 37

1    factual basis for the plea.  While the report was accepted

2    establishing a Level 23, Category I as the guideline, it

3    could also in the alternative be as low as a Level 6 for

4    false statement to the Government agency and with a two-

5    level reduction would be a Level 4, Category I, which would

6    be a zero to six range.  So I have -- those are the two

7    extremes within which the Court could find guidance in a

8    guideline.  And under 3553(a), it doesn't appear to me,

9    based on the offense that a custodial sentence would be

10    necessary.  And I think that a sentence of probation with

11    community service would reflect the seriousness of the

12    offense of making a false statement, but also promote

13    respect for the law.  That there doesn't appear to be any

14    need to protect the public from further crimes of the

15    defendant as the defendant has disavowed any militant

16    behavior or attitude or future.  And I think that under the

17    fourth provision, providing for the defendant's vocational

18    training and educational training that a custodial sentence

19    would not be appropriate.  And I think that this sentence

20    will send a sufficient message to protect the public from

21    further crimes.  So I will sentence the defendant to three

22    years of probation on the condition that he perform 250

23    hours of community service and not violate any federal,

24    state or local law, not associate with any person involved

25    in any military or militant action that would be a threat

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

Case 5:15-cr-00147-FL   Document 26   Filed 10/28/15   Page 35 of 37

1    to peace or to the United States and not otherwise violate

2    any federal, state or local law.  And pay a special

3    assessment of $100.00.

4         And either side can appeal that.  That's all.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646     sgrahamassoc@gmail.com

STATE OF NORTH CAROLINA        )
                               ) C-E-R-T-I-F-I-C-A-T-I-O-N
COUNTY OF PERQUIMANS           )


        I certify that the foregoing is a correct

transcript from the record of proceedings in the above-

entitled matter.



*Sandra A. Graham, CVR-M*                    *10/28/2015*
Sandra A. Graham, CVR-M              October 28, 2015
Court Reporter & Notary Public
Notary Public Number:  19940140086

S. Graham & Associates
Court Reporting Services
P.O. Box 385
Elizabeth City, NC 27907-0385
(252) 264-4646        sgrahamassoc@gmail.com